[Civ. No. 1034.   First Appellate District.—December 12, 1911.]

## JAMES O'DONNELL et al., Appellants, v. SAMUEL G. MURPHY, as Executor, etc., et al., Respondents.

EQUITY—POWER TO IMPOSE TRUST UPON LEGATEE—PROMISE—SECRET TRUST FOR UNLAWFUL PURPOSE—ENFORCEMENT FOR BENEFIT OF HEIRS.—A court of equity may impose and enforce a trust upon a legatee who has procured a legacy to be given him by a promise, express or implied, to take and hold the same for some particular person or use; and where there is a secret trust for a purpose prohibited by law, and no other disposition is made of the legacy, the legatee will be held by a court of equity to hold the legacy in trust for the heirs at law.

ID.—EVIDENCE—PROMISE TO HOLD UPON SECRET TRUST FOR BENEFIT OF HEIRS ESSENTIAL.—The evidence must establish that the legacy so given upon a secret trust for an illegal purpose was given upon a promise, express or implied, that it would be taken and used for the particular trust specified, before it can be declared that the legacy is held in trust for the heirs at law.

ID.—POWER OF DISPOSITION IN PARTICULAR WAY—DISCRETION OF LEGATEE—ABSENCE OF PROMISE—SECRET TRUST NOT CREATED.— While a testator may make a gift to a legatee, solely for the purpose of enabling him, if he sees fit, to dispose of it in a particular way, yet if there is no promise, express or implied, to so dispose of it, and the matter is left wholly to his will and discretion, no secret trust is created and the legatee may, if he chooses, apply the legacy to his own use.

ID.—MERE EXPECTATION OF TESTATOR IMMATERIAL—PASSAGE OF TITLE —DISPOSITION OF GIFT—ABSENCE OF LEGAL OBLIGATION.—When it clearly appears that no secret trust was intended, even if it is equally clear that the testator expected that the gift would be applied in accordance with his known wishes, the legatee, if he has made no promise and none has been made in his behalf, takes an absolute title, and can do what he pleases with the gift. Whatever moral obligation there may be, no legal obligation rests upon him.

ID.—BEQUEST TO INDIVIDUAL MEMBERS OF PARK COMMISSIONERS— MEMORIAL GATE—ABANDONMENT OF PURPOSE—ABSOLUTE BEQUEST. Where the will of a testatrix, in making a bequest of $200,000 to individual members of the board of park commissioners, explicitly declared that she had abandoned her previous idea of providing for the erection of a memorial gate at the entrance to the park, owing to a doubt as to the validity of such donation, and that the bequest was made as an absolute bequest, without any trust or un-

17 Cal. App.—40

derstanding, either express or implied, as to its use or appropriation, or otherwise, and the evidence, in an action by the heirs in equity to enforce a trust, wholly fails to show that there was any promise express or implied, by the legatees, in relation to the use of such legacy, no trust exists or can be enforced in their favor.

ID.—VOLUNTARY DECLARATION OF TRUST AFTER DEATH OF TESTATRIX—ERECTION OF MEMORIAL GATE—INSUFFICIENT PROOF OF PROMISE.—The execution of a voluntary declaration of trust on the part of the legatees, to whom the absolute bequest of the legacy was made, after the death of the testatrix, declaring their purpose to use the same for the erection of the memorial gate at the entrance to the park, such as she had formerly wished to have created, simply shows that her confidence in their discretion was not misplaced, but does not necessarily show that the bequest was upon any promise, express or implied.

ID.—FINDINGS SUPPORTED BY SUFFICIENT EVIDENCE—CONCLUSIONS OF TRIAL COURT BINDING UPON APPEAL.—It is held, upon a review of the evidence, that it sustains the findings of the superior court that no trust was created in favor of the heirs; and that the most that can be reasonably claimed for the whole evidence is that it possibly exhibits a case in which either of two opposite conclusions might be drawn by the trial court, in which case the appellate court is bound by the conclusions of the trial court.

ID.—DECLARATION OF TESTATRIX AFTER EXECUTION OF WILL INADMISSIBLE HEARSAY.—Evidence of a declaration made by the testatrix, after the execution of her will, that she had made it and had done handsomely by the park, was hearsay and inadmissible for any purpose.

APPEAL from an order of the Superior Court of the City and County of San Francisco denying a new trial. J. M. Seawell, Judge.

The facts are stated in the opinion of the court.

Maguire, Lindsay, Houx & Barrett, for Appellants.

Charles S. Wheeler, A. Heynemann, and J. F. Bowie, for Respondents.

HALL, J.—This is an appeal by plaintiffs from an order denying their motion for a new trial.

This action was brought by the next of kin and heirs at law of Honora Sharp, deceased, for the purpose of obtaining a decree of the superior court that certain bequests made by

said Honora Sharp, deceased, in her last will and testament, are held by respondents in trust for appellants.

The action as brought involved a bequest of $200,000 to Adolph B. Spreckels and Reuben H. Lloyd, a bequest of $25,000 to the King's Daughters' Home for Incurables, and one of $25,000 to the Society for the Prevention of Cruelty to Animals, but the action was dismissed as to the two latter named legatees, and the action as tried involved only the bequest of $200,000 given to Spreckels and Lloyd.

By the first paragraph of the will of Honora Sharp, she appointed Samuel G. Murphy sole executor thereof.

The second paragraph is as follows:

"I have no near relatives nor any to whom I desire to give any part of my estate; my late husband, George F. Sharp, now deceased, having derived profit from the dedication and opening of Golden Gate Park in said city and county, and I, during my later years, having obtained much enjoyment out of said park, it was my desire to erect some suitable memorial to my said late husband in said park; for that purpose I intended to donate a large portion of my fortune (all of which was inherited by me from my late husband), towards erecting a memorial gate at the entrance to what is known as the Panhandle of the park; but there being some doubt as to whether or not a donation for that purpose would or would not be considered a charity, or unlawful trust, and be set aside at the instigation of someone claiming heirship to me, to whom I had left nothing and to whom I desire to leave nothing; I have therefore abandoned that idea; and do now devise and bequeath to Adolph B. Spreckels and R. H. Lloyd, two of the park commissioners of the City and County of San Francisco, the sum of two hundred thousand dollars ($200,000). This is an absolute bequest to them, without any trust or understanding, either express or implied, as to its use or appropriation or otherwise."

By the third and fourth paragraphs of her will she gave to the King's Daughters' Home $50,000, and to the Salvation Army $25,000. The bequest to the King's Daughters' Home. was subsequently in a codicil cut to $25,000.

By the fifth and sixth paragraphs she gave to certain named persons a total of $30,000.

By the seventh paragraph she directed the executor to pay all inheritance taxes.

The eighth and ninth paragraphs are as follows:

## "EIGHTH.

"In case any bequest or devise in this will hereinbefore specified shall fail, or be declared inoperative or void for any cause, then the amount of such devise or bequest shall go to and be a part of my residuary estate; and shall go to and be the property of my residuary legatee hereinafter named.

## "NINTH.

"All the rest, residue and remainder of my estate, be it real, personal or mixed, and wheresoever situate, and all illegal or inoperative bequests or devises, I give, devise and bequeath to my said executor, Samuel G. Murphy."

By the terms of her will, exclusive of the eighth and ninth paragraphs, said Honora Sharp disposed of a total of $280,000, which exceeded the net value of her estate. Therefore, if it should prove to be a fact that the bequest of $200,000 was given in trust for a charitable use, it would in great part be void by reason of the statute providing that a testator may devise or bequeath not more than one-third in value of his estate to charitable uses. (Civ. Code, 1313.)

It is manifest from the reading of the will that before the appellants, as the heirs at law, can have any interest or claim upon the $200,000, it must be established not only that the $200,000 was given in the second paragraph upon an invalid secret trust, but that the same trust followed the said $200,000 in case it should fall into the residuum of the estate, and pass under paragraphs eight and nine of the will to Samuel G. Murphy.

Consequently, it was alleged in the complaint in substance and effect that said $200,000 was given by said Honora Sharp in said will in trust and upon the promise of said Lloyd, Spreckels and Murphy, and each of them, made to her by them and each of them, to apply and use the said bequest when received by them or any of them, from her estate, toward the erection of a gate at the entrance to the Panhandle of Golden Gate Park.

The defendants, Spreckels, Lloyd and Murphy, denied these allegations, and set forth that said $200,000 was bequeathed

as in said will set forth and not otherwise, and the court found upon these issues in favor of respondents, and entered judgment that appellants take nothing by their action.

It is upon the alleged insufficiency of the evidence to support these findings that appellants rely for a reversal of the order.

That a court of equity may impose and enforce a trust upon a legatee who has procured a legacy to be given to him by a promise, express or implied, to take and hold the same for some particular person or use is not disputed. (*Edson* v. *Barstow*, 154 N. Y. 218, [48 N. E. 541]; *O'Hara* v. *Dudley*, 95 N. Y. 403, [47 Am. Rep. 53]; *Amherst College* v. *Ritch*, 151 N. Y. 283, 323, [45 N. E. 876, 37 L. R. A. 305].)

Where the secret trust is for a purpose prohibited by law, and no other disposition is made of the legacy, the legatee will be held by a court of equity to hold the legacy for the heirs at law. (See cases above cited.)

But before this may be done the evidence must establish that the legacy was given upon a promise, express or implied, that it would be taken and used for the particular trust.

"While a testator may make a gift to a legatee solely for the purpose of enabling him, if he sees fit, to dispose of it in a particular way, still, if there is no promise by him, express or implied, to so dispose of it, and the matter is left wholly to his will and discretion, no secret trust is created, and he may, if he chooses, apply the legacy to his own use. When it clearly appears that no secret trust was intended, even if it is equally clear that the testator expected that the gift would be applied in accordance with his known wishes, the legatee, if he has made no promise, and none has been made in his behalf, takes an absolute title, and can do what he pleases with the gift. Whatever moral obligation there may be, no legal obligation rests upon him." (*Amherst College* v. *Ritch*, 151 N. Y. 283, 323, [45 N. E. 876, 37 L. R. A. 305]. See, also, *Rowbotham* v. *Dunnett*, 8 L. R. Ch. D. 430; *McCormick* v. *Grogan*, 4 L. R. Eng. & Ir. App. 82.)

This brings us to a discussion of the evidence. As before indicated, unless the finding as to Mr. Murphy is not sustained, appellants have no claim upon any part of the $200,000. So far as Mr. Murphy is concerned, we are unable to find anything in the evidence to support the contention

that any promise was made by him or for him, either express or implied. He knew nothing about the will or its contents until after it had been executed. It was then brought to him by Mr. Lloyd, at the direction of Mrs. Sharp, when he read it and placed it in his safe. It did not on its face indicate that any trust was intended by the legacy of $200,000 to Spreckels and Lloyd or by the residuary bequest to him. Though the will on its face indicated that Mrs. Sharp at one time did intend to give by her will a large sum for the erection of a memorial gate at the park, it showed that she had fears that such a bequest might be held invalid, to the advantage of her heirs at law, to whom she desired to leave nothing, and contained her solemn declaration to the effect that for that reason she had abandoned the idea once entertained. After bequeathing to Spreckels and Lloyd $200,000 the testatrix is careful to state in her will that "This is an absolute bequest to them, without any trust or understanding, either express or implied, as to its use or appropriation or otherwise."

Mr. Murphy, during the short period that Mrs. Sharp survived the making of the will, visited her several times. On the occasion of one of these visits, Mrs. Sharp told him that she wanted him to see that her will was carried out, and this he promised to do. But there is not a suggestion in the evidence that either he or she in any way spoke of any gate for the park, or of any purposes she had as to the disposition of her estate other than as shown upon the face of her will. He did tell her the story of the boy eating an apple, who, being asked by a companion for the core, replied, "There isn't going to be any core," but it would be a strained construction to say that this contained a promise to apply any money that might come to him to the erection of any gate. The story was probably told as indicating his opinion that in view of the amount of her bequests and the value of the estate, there would be no residuum to come to him—no "core" for him.

We have not overlooked the fact that Mr. Murphy, after the will had been admitted to probate, executed an instrument designed to further and assist in the purpose of Spreckels and Lloyd, as evidenced by a declaration of trust executed by them, to apply whatever should be realized from the bequest of $200,000 to the erection at the park of a memorial gate.

While this indicates public spirit on the part of the gentlemen concerned, and shows that the hope that Mrs. Sharp doubtless entertained, as to what disposition her legatees might make of her bounty, was not without foundation, it does not in itself prove that this action was taken by the legatees because of any promise so to do. Mr. Murphy, so far as the record shows, made no promise regarding the $200,000 legacy or any other, and no promise was made for him in that regard.

It is thus clear that the findings of the court, so far as they relate to Mr. Murphy, are supported by the evidence. Indeed, we are of the opinion that a contrary finding could not be justified by the evidence.

This conclusion is sufficient for a disposition of the contention that the findings are not supported by the evidence, for as before stated, the appellants have no interest in the disposition of the $200,000 or any part of the estate of Mrs. Sharp, unless they can charge Mr. Murphy as a trustee for them, and this they have failed to do.

We have, however, examined the record with care as to the findings with regard to respondents Spreckels and Lloyd, and are unable to agree with the contention of appellants.

Mr. Lloyd, on the day before the will was drawn, visited Mrs. Sharp at her request, and found her confined to her bed with the sickness of which she within two months thereafter died. She explained to him, as her attorney, her wishes as to the disposition of her estate, and among other things told him that she wished to leave $200,000 (which would constitute the major portion of her estate) for the purpose of erecting a gate at the park as a memorial to her deceased husband. In view of the amount of the intended bequest and her estate, he suggested doubts as to its validity, but told her that he would consult his partner and advise her further the next day. He returned the next day and told her that such a bequest would be invalid, and gave the reasons therefor. She then suggested that the bequest be made to himself and Mr. Spreckels as park commissioners. He told her that they would take as public officers and in trust, and the bequest would still be void. She then asked him if she could not give the money to Mr. Lloyd and Mr. Spreckels individually, and he then proceeded to explain to her that she could as follows:

"I said, 'You can give it to anybody individually, providing you can't put any strings on it, but you can't give it to anybody with a secret trust in it, express, implied, or understood in any way. If you want to give it absolutely to anyone, you can do so; you can give your property to anybody you please—do as you like, but you can't make a trust of it. If you do, that will be investigated, and if it turns out that it is a trust, of course it has to take the result.' 'Well,' she said, 'I want to give it to you absolutely, without any strings on it.' I said, 'You can do that if you wish.' 'Well,' she said, 'that is what I wish to do. Do with it as you please; put it in your pocket, or do anything you like with it.' I said, 'You can do that if you wish, Mrs. Sharp.' She said, 'Well, that is what I wish to do.' "

The will was thereupon drawn with the provisions as hereinbefore set forth, and containing her explicit declaration that she had abandoned the idea of providing for the erection of the memorial gate, with her very cogent reasons therefor.

In addition, Mr. Lloyd answered categorically that he, neither for himself, Mr. Spreckels or Mr. Murphy, made any promise, express or implied, with relation to the use of the legacy in question.

We think it hardly needs argument to demonstrate that the above evidence amply supports the findings of the court in question. There is no pretense that Mr. Spreckels ever knew anything about the will or its contents, or the purposes of Mrs. Sharp, until after her death. While it is true that Mrs. Sharp knew that each of these gentlemen was a park commissioner, and had for years taken great pride and interest in its development; that they were men of ample private fortune, and that she had great confidence in them as men of integrity and public spirit; these matters but justified her hope and expectation that the legacy would be applied in accordance with her known wishes. Their prompt action, after her death and the probate of her will, in executing a declaration of trust as to the legacy for the purpose of securing its application to the erection of such a gate as she had wished to be erected, shows that her confidence was not misplaced, but does not necessarily show that the bequest was made upon any promise, express or implied.

The whole evidence and circumstances simply bring the case within the rule stated near the beginning of this opinion in the excerpt from the case of *Amherst College* v. *Ritch,* 151 N. Y. 283, 323, [45 N. E. 876, 37 L. R. A. 305]. The most that can be reasonably claimed for the evidence is that it possibly exhibits a case in which either of two opposite conclusions might be drawn by the trial court, in which case we are bound by the conclusions of the trial court. (*Edson* v. *Barstow,* 154 N. Y. 218, [48 N. E. 541].)

The findings of the trial court are amply supported by the evidence in the record.

The only other point presented as a reason why a new trial should be granted is that the court erred in refusing to permit appellants, over the objection of respondents, to prove a declaration claimed to have been made by Mrs. Sharp to one McManus, after the execution of the will, that she had made her will and had done handsomely by the park. We have been cited to no authority that holds that the intention of a testator may be proved by evidence of her declarations to third parties, made subsequently to the execution of her will, and we know of none. Such evidence is clearly hearsay and inadmissible for any purpose. (*Vreeland* v. *Williams,* 32 N. J. Eq. 734.)

The order should be affirmed, and it is so ordered.

Lennon, P. J., and Kerrigan, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on February 9, 1912.