### WOOD v. UNITED STATES.

United States District Court,
S. D. New York.
June 9, 1953.

See, also 121 F.Supp. 769.

Kelley, Drye, Newhall & Maginnes, New York City (John W. Drye, Jr., Hancock Griffin, Jr., New York City, of counsel), for plaintiff.

J. Edward Lumbard, U. S. Atty. for the Southern Dist. of New York, New York City (Henry L. Glenn, Asst. U. S. Atty., New York City, of counsel), for defendant.

LEIBELL, District Judge.

The facts in this case have been stipulated in two stipulations of fact, copies of which are annexed to this opinion. Plaintiff seeks a refund of $19,910.04 on his 1944 income tax. The Government prays for a recoupment of $16,796.88, as a sum due on plaintiff's 1945 income tax.

The case at bar presents the question of the applicability of the equitable doctrine of recoupment in income tax cases. The doctrine was discussed and applied in two cases by Mr. Justice Stone. Bull v. United States, 295 U.S. 247, 55 S.Ct. 695, 79 L.Ed. 1421, and Stone v. White, 301 U.S. 532, 57 S.Ct. 851, 81 L.Ed. 1265. But in a later case, McEachern v. Rose, 302 U.S. 56, 58 S.Ct. 84, 82 L.Ed. 46, the Justice seems to have looked more to the statute of limitations fixed by Congress in the then Sections 607 and 609 of the Internal Revenue Act of 1928 [now 26 U.S.C.A. §§ 3770(a) (2) and 3775(a)]. In the McEachern case the Supreme Court explained that in Stone v. White there was no question of the applicability of the statute of limitations. But in Bull v. United States the doctrine of recoupment was applied even though the statute of limitations would have barred an independent suit by the Government.

In the case of Rothensies v. Electric Storage Battery Co., 1946, 329 U.S. 296, 67 S.Ct. 271, 272, 91 L.Ed. 296, the doctrine of recoupment as applied to tax cases, was discussed by Mr. Justice Jackson and the cases of Bull v. United States and Stone v. White were referred to as the only tax cases in which that doctrine had been applied by the United States Supreme Court.

The following is quoted from the opinion of Mr. Justice Jackson in the Rothensies case:—

"It is not contended that there is any statutory warrant for allowing barred tax refund claims by way of recoupment or otherwise. Authority for it is said to be found in case law and taxpayer relies chiefly on two decisions of this Court, Bull v. United States, 295 U.S. 247, 55 S.Ct. 695, 79 L.Ed. 1421, and Stone v. White, 301 U.S. 532, 57 S.Ct. 851, 81 L.Ed. 1265. The essence of the doctrine of recoupment is stated in the Bull case; 'recoupment is in the nature of a defense arising out of some feature of the transaction upon which the plaintiff's action is grounded.' 295 U.S. 247, 262, 55 S.

Ct. 695, 700, 79 L.Ed. 1421. It has never been thought to allow one transaction to be offset against another, but only to permit a transaction which is made the subject of suit by a plaintiff to be examined in all its aspects, and judgment to be rendered that does justice in view of the one transaction as a whole.

"The application of this general principle to concrete cases in both of the cited decisions is instructive as to the limited scope given to recoupment in tax litigation. In both cases a single transaction constituted the taxable event claimed upon and the one considered in recoupment. In both, the single transaction or taxable event had been subjected to two taxes on inconsistent legal theories, and what was mistakenly paid was recouped against what was correctly due. In Bull v. United States, the one taxable event was receipt by executors of a sum of money. An effort was made to tax it twice— once under the Income Tax Act as income to the estate after decedent's death and once under the Estate Tax Act as part of decedent's gross estate. This Court held that the amount of the tax collected on a wrong theory should be allowed in recoupment against an assessment under the correct theory. In Stone v. White, likewise, both the claim and recoupment involved a single taxable event, which was receipt by an estate of income for a period. The trustees had paid the income tax on it but this Court held it was taxable to the beneficiary. Assessment against the beneficiary had meanwhile become barred. Then the trustees sued for a refund, which would inure to the beneficiary. The Court treated the transaction as a whole and allowed recoupment of the tax which the beneficiary should have paid against the tax the Government should not have collected from the trustees. Whatever may have been said indicating a broader scope to the doctrine of recoupment, these facts are the only ones in which it has been applied by this Court in tax cases."

In the case at bar we have the same item, $67,187.50 deducted from the same purchase price, $431,187.50 in each of the taxable years, 1944 and 1945. For the year 1944 the taxpayer deducted said sum of $67,187.50 as an amortization of the premium he paid for the American Telephone and Telegraph Company fifteen year three percent convertible bonds, due September 1, 1946, which he purchased in November, 1944. The bonds were callable by the Company at any time on thirty days' notice, at 104%.[1] The taxpayer selected as a call date, a date which was thirty days after the date of purchase. The Commissioner refused to allow the deduction and assessed a deficiency of $44,255.20 with interest.

In May and June of 1945 the taxpayer sold the 350 bonds for $443,874 [2] and in reporting a capital gain in his income tax return for that year, he computed his profit by using as the cost base, the actual cost of the bonds, $431,187.60, minus the deduction for amortization, $67,187.50 claimed in 1944, which gave him a large capital gain for tax purposes. On the audit of the 1945 return, the Commissioner determined that the basis on which the taxpayer's profit should be calculated was the cost price of $431,187.50, without any deduction for the amortization of $67,187.50, because the Commissioner had disallowed the deduction of $67,187.50 claimed in 1944. The Commissioner's two rulings were consistent but both were incorrect, as later decisions showed. The Commissioner's ruling in respect to the 1945 tax resulted in decreasing the taxpayer's long-term capital gain for 1945 and reducing

1. The actual call date was September 1, 1947.

2. The figure may have been $441,000.

his taxes, and the taxpayer was accordingly allowed a net overassessment of $7,393.73 for that year.

The Commissioner's deficiency assessment of $44,255.20 plus interest of $4,490.99, a total deficiency of $48,746.19 on the 1944 return, was paid in part by the taxpayer as follows:—(a) by endorsing and delivering Treasury check of August 12, 1947 for $12,667.86 issued in connection with a notice of refund for 1946; and (b) by applying during August 1948 the $7,393.73 certificate of overassessment for the tax year 1945— a total of $20,061.59.

On August 7, 1949, the taxpayer filed a claim for a refund with the Collector of Internal Revenue for $19,910.04, the amount of the deficiency assessment he had thus paid [$20,061.59, less $151.55 for some other item].

On June 5, 1950, the United States Supreme Court in the case of Commissioner of Internal Revenue v. Korell, 339 U.S. 619, 70 S.Ct. 905, 94 L.Ed. 1108, an action involving an amortizable premium on the same issue of American Telephone and Telegraph Company bonds, held that the taxpayer Korell was entitled to a deduction of the bond premium in his 1944 income tax return. Applying that ruling to the case at bar, the taxpayer would be entitled to the refund claimed in this action $19,910.04. If the Korell decision had been the other way, the present taxpayer, C. Marshall Wood, would have had to pay a balance of about $28,500 on his 1944 tax.

But the Government asserts that it should have a recoupment of $16,796.88, the amount of the deficiency on the taxpayer's income tax for 1945, if the actual cost of the bonds minus the $67,187.50 had been used in figuring the profit on their sale in 1945 (as the taxpayer had originally filed his return for 1945) instead of the actual cost of the bonds, which the Commissioner had used in calculating the taxpayer's 1945 income tax. The $16,796.88 is an amount directly attributable to that same item of $67,187.50. That item had been mistakenly interpreted by the Commissioner as to its tax effects on both the 1944 and 1945 income tax of the taxpayer.

The Government seeks to recoup the said sum of $16,796.88, although the collection of any 1945 tax deficiency would be barred by the statute of limitations if the Government had brought an independent suit for the $16,796.88 at the time plaintiff's action was commenced on June 22, 1951. The taxpayer relies on the statute of limitations as a bar to any set-off or recoupment based on the 1945 tax deficiency.

The decision of the Tax Court in the Korell case, 10 T.C. 1001, which went against the Commissioner, was filed June 2, 1948. On appeal to the United States Court of Appeals, Second Circuit, the Tax Court decision was affirmed June 8, 1949 and a petition for a rehearing was denied July 14, 1949. 176 F.2d 152. The United States Supreme Court affirmed the Second Circuit on June 5, 1950. 339 U.S. 619, 70 S.Ct. 905, 94 L.Ed. 1108. As far back as June 2, 1948, the Internal Revenue Bureau was on notice that the Commissioner's ruling that the taxpayer had no right to amortize in full the bond premium and deduct the premium from the taxpayer's income for 1944, was erroneous. However, nothing appears to have been done to keep open the matter of determining this taxpayer's (Wood's) proper income tax for the year 1945. The Commissioner's incorrect overassessment was used by the taxpayer in August 1948, as a credit on the taxpayer's alleged deficiency for the year 1944.

The taxpayer filed on August 7, 1949, his claim for a refund for the $19,910.04 of the deficiency assessment for income taxes for 1944. That was about two months after the United States Court of Appeals decision in the Korell case. The taxpayer (Wood) did not commence any suit for the refund on the 1944 tax until June 22, 1951, when the complaint in this action was filed. The Government in paragraph 21 of the stipulation of facts in this case, subscribed to the fol-

lowing statement: "The statutory period within which the Commissioner of Internal Revenue is authorized to assess additional taxes against plaintiff (Wood) for the taxable year 1945 has expired". This statement has been supplemented by stipulation of additional facts as follows:—

"1. In amplification of Paragraph 21 of said prior stipulation of facts, on or about April 6, 1946, pursuant to an extension of time duly granted, plaintiff filed in the office of the Collector of Internal Revenue of the United States for the Second District of New York an income tax return on U. S. Treasury Department Form 1040 covering the calendar year 1945. The statutory period within which the Commissioner of Internal Revenue was authorized to assess additional taxes against plaintiff for the said year 1945 (as distinguished from the recovery of an erroneous credit or refund) expired on April 6, 1949, three years from the date of filing the return for 1945, as provided by Section 275 of the Internal Revenue Code [26 U.S.C.A. § 275]. The time within which the Commissioner was authorized to recover the amount of the overassessment for 1945 described in Paragraph 18 of the prior stipulation of facts or the net credit of $7,393.73 described therein, if the overassessment or credit was erroneous as that term is used in Section 3746(b) of the Internal Revenue Code [26 U.S.C.A. § 3746 (b)], expired in August, 1950, two years after the making of the same, as provided in said section."

The figure of $67,187.50 is involved in both the 1944 and 1945 income tax returns of the taxpayer. And the United States Supreme Court decision in the Korell case affected the taxpayer's (Wood's) 1944 and 1945 taxes.

This case is very similar to Bull v. United States, 295 U.S. 247, 55 S.Ct. 695, 79 L.Ed. 1421. In that case there was an item of $212,718.79 on which the Commissioner had collected an Estate tax, holding said item to be part of the corpus; and on the same item he sought to collect an income tax holding it to be part of the income of the estate. The Supreme Court decided that the petitioner, an executor, was entitled to have credited against the deficiency of income tax on the decedent's estate, the amount of the executor's overpayment of Estate taxes, with interest, even though it was too late to file a claim for refund of the Estate tax, when the Board of Tax Appeals upheld the proposed deficiency of income tax.

In the Bull case two different kinds of taxes were involved, one an estate tax and the other an income tax. As to each, the same taxpayer was involved, the executor of the estate. And in the computation of each tax the same item was involved. The two different kinds of taxes were not necessarily payable in the same year. In the Rothensies case the court stated that "it has never been thought to allow one transaction to be offset against another, but only to permit a transaction which is made the subject of suit by a plaintiff to be examined in all its aspects, and judgment to be rendered that does justice in view of the one transaction as a whole." [329 U.S. 296, 299; 67 S.Ct. 272]

■ The plaintiff's attorneys argue in the case at bar, that two transactions are involved; one relates to the purchase of the bonds in 1944 and the other to the sale of the same bonds in 1945. The premium of $67,187.50 was paid in connection with the purchase, and apparently could be and was amortized and deducted by the taxpayer from his 1944 income. The sale of the bonds took place in 1945 and it was in connection with the determination of the taxpayer's taxable profit for his 1945 income tax that the same premium, the item of $67,187.-50 was involved. The taxpayer argues that he might have held the bonds and not sold them until a later year than 1945 and that the separability and dis-

tinctiveness of the two transactions would then be even more apparent. As to the defendant's claim of recoupment for the full $16,796.88, the additional amount of the 1945 tax as the result of the Korell decision, I am constrained by the Rothensies decision to deny the recoupment in that amount. But it should be allowed to the extent of $7,393.73 for the following reasons.

There is an additional equitable factor in this case. Part of the payment which the taxpayer seeks as a refund on his 1944 income tax was really a credit for an overassessment of $7,393.73 on his 1945 income tax, which the Commissioner mistakenly made and allowed because of this item of $67,187.50. The taxpayer on July 28, 1947 signed an Acceptance of Proposed Overassessment (Form 873) and used the credit of $7,393.73 in reducing the amount of the deficiency on his 1944 tax in August 1948. This item of $7,393.73 is part of the $19,910.04 which plaintiff seeks to recover in this action. It was a credit from his 1945 tax payment, which he was not entitled to. What he is actually seeking in respect to the $7,393.73 is a refund of that sum on what he paid as his 1945 tax. So that if we examine the taxpayer's claimed refund of the alleged overpayment of his 1944 tax, from all its angles, it is clear that the claim for refund includes this $7,393.73. It would appear that even under the Rothensies decision, this sum of $7,393.73 is a proper item for recoupment.

I have therefore concluded that the Government is entitled to a recoupment of $7,393.73 against the plaintiff's claim of $19,910.04. The plaintiff's motion for summary judgment for $19,910.04 is granted and the Government's cross motion for a recoupment is granted, to the extent of $7,393.73. The net result will be that plaintiff will be granted a judgment for the sum of $12,516.31, together with interest thereon as allowable under the statute, together with his proper costs and disbursements.

Settle an order accordingly, covering both motions.