WELLS FARGO BANK & UNION TRUST CO., Executor of the Will of Walter D. K. Gibson, Deceased, Appellant,

v.

UNITED STATES of America, Appellee.

No. 15046.

United States Court of Appeals Ninth Circuit.

May 6, 1957.

Rehearing Denied June 4, 1957.

Morrison, Foerster, Holloway, Shuman & Clark, Franklin C. Latcham, W. T. Fitzgerald, Clarence E. Musto, San Francisco, Cal., for appellant.

Charles K. Rice, Asst. Atty. Gen., George Lynch, Lee A. Jackson, I. Henry Kutz, Davis W. Morton, Jr., Attys., Dept. of Justice, Washington, D. C.,

Lloyd H. Burke, U. S. Atty., San Francisco, Cal., for appellee.

Before POPE and FEE, Circuit Judges, and EAST, District Judge.

EAST, District Judge.

This action was brought in the District Court for the Northern District of California, Southern Division, under Section 1346(a) (1), Title 28, U.S.C.A., for the refund of certain income taxes alleged to have been erroneously assessed and collected.

The main facts are not in dispute and were the subject of stipulation in the District Court.

The Appellant is the Executor of the last Will and Testament of Walter D. K. Gibson, deceased, who died on December 21, 1938 (Decedent). The estate of Decedent (Walter's Estate) was in the course of administration from January 11, 1939 to August 26, 1941, when it was distributed under decree of final distribution. However, Appellant was not discharged as Executor.

Decedent's will was executed on August 31, 1937.[1] Contemporaneously

---

1. "I, Walter D. K. Gibson, of the City and County of San Francisco, State of California, being of sound and disposing mind and memory, do make, publish and declare this to be my last Will and Testament, in manner following, that is to say:

"First: I hereby revoke all former wills and testamentary dispositions heretofore made by me.

"Second: I hereby declare that all my property and estate, of every kind and description and wherever situate, *are the community property of myself and my wife, Emily A. Gibson;* and that it is my understanding that, under the laws of the State of California, my said wife may elect to take one-half (½) of all my property and estate absolutely as her own, free and clear of the provisions of this my Last Will and Testament; or that, at her election, she may waive such right and elect to accept the provisions of this my Last Will and Testament. The provisions of this my Last Will and Testament are made and are *conditioned upon the assumption that my said wife will in fact waive her right to take one-*

*half (½) or any* part of my property and estate. absolutely as her own, and that. she will elect to accept the provisions of this my Last Will and Testament made herein for her benefit. (Emphasis supplied.)

\* \* \* \* \*

"Fifth: In the event that my said wife shall survive me, all the rest, residue and remainder of my estate I give, devise and bequeath to Wells Fargo Bank & Union Trust Co., (of San Francisco), in trust, nevertheless, to and for the uses and purposes and upon the terms and conditions following: (Provisions not material to us.)

\* \* \* \* \*

"(3) The Trustee shall set aside all the rest of the trust estate \* \* \* which said trust estate shall be known as the Emily A. Gibson Trust Estate. The Trustee shall pay the net income therefrom to my said wife during her lifetime. My said wife *shall also be entitled to withdraw such portions of the corpus* of said Emily A. Gibson Trust Estate (not exceeding, however, *in all one-half*

with the execution of Decedent's will, Emily A. Gibson, wife of Decedent (Emily), executed a waiver of her right to claim one-half of any part of the community property of the spouses involved and agreed to accept the terms of Decedent's will.[2]

## Statement of Facts

The Decedent's ultimate estate under the will was composed entirely of community property of himself and Emily and his estate was ultimately distributed in accordance with the provisions of his will and the election of Emily to withdraw fifty per cent of Decedent's estate, which power to withdraw she exercised during the course of administration of Decedent's estate and on May 8, 1941, and assigned the property to the Crocker First National Bank of San Francisco to hold as Trustee, under a trust agreement.

For the period, January, 1941, through August 26, 1941, one-half of the income attributable to the property subject to administration in the Decedent's estate, was returned by the taxpayer for purposes of federal income taxes. The other one-half was reported on a return filed by the executor of the estate of the wife, Emily, she having died on November 24, 1941.

A deficiency was proposed by the Appellee against Decedent's estate on the ground that the entire income of the property subject to administration for the period was taxable to him. Concurrently an over-assessment was proposed with respect to the tax paid by the estate of the wife, Emily. Some readjustments were made by the parties amicably and the balance was paid by the Decedent's estate in cash.

The Appellant, taxpayer, filed a claim for refund of this payment on the ground that for the period in question only one-half of the income was chargeable to the Decedent's estate and the other half being chargeable to the estate of Emily.

The Appellee allowed this claim in the amount of $9,362.58. However, such refundable sum was reduced by the amount which thereby became due from the estate of Emily and the difference was paid by the Defendant to the taxpayer. It follows that in this suit the Appellant sought to recover that amount of his claim for refund which was not refunded in cash, being stipulated sum of $7,100.35. Parenthetically, it must be noted that the only reason that the Appellee claims that this amount should be withheld was on account of claimed taxes due from the estate of Emily and in line with its hereinafter referred to claim of recoupment.

## Questions Presented

1. Whether the income received by the estate of a deceased husband during administration is wholly taxable to the estate, or taxable half to the estate and half to the surviving wife where the estate was comprised entirely of community property in which the husband and wife had present and equal interests at the time of the husband's death.

2. Whether in such a case the income received by the estate is wholly taxable to the estate, or half to the estate and half to the surviving wife where the wife consented to take under the husband's will, but retained the right to withdraw half of the estate.

(½) of the amount of the corpus thereof) from time to time and for any purpose as she may desire." (Emphasis supplied.)

2. "I, Emily A. Gibson, the wife of Walter D. K. Gibson, hereby state that I have read the foregoing Last Will and Testament of my husband dated August 31, 1937, and in consideration of its provi-

sions therein contained for my benefit and for the benefit of others therein mentioned, I agree to accept the terms thereof, and I hereby waive my right to claim one-half (½) or any part of the community property of myself and husband upon his death prior to my decease.

"Dated: August 31, 1937.

"Emily A. Gibson"

3. Whether the defense of equitable recoupment applies to prevent a recovery by appellant in this case.

 The legal question involved in Question 1 is answered by the doctrine of Bishop v. Commissioner of Internal Revenue, 9 Cir., 1945, 152 F.2d 389. As the District Court said in its opinion, reported in 134 F.Supp. 340, at page 341:

> "In the Bishop case the taxpayer and his wife, California residents throughout their married life, had present, existing and equal rights in the community property. During the administration of the estate of the husband half of the income was reported by the estate and half by the widow. The Commissioner sought to tax all the income as that of the estate. The Court of Appeals held that the widow, being the owner of a one-half interest in the community property, owned one-half of the income therefrom. Therefore the estate, it was held, could not be taxed on more than one-half."

It is noted that the theory of the Bishop case is that tax liability shall be upon the owner of the property creating the income. Quoting from the Bishop case, 152 F.2d at page 391, we find:

> "The Tax Court appears to have assumed that, upon decedent's [husband] death, petitioner's [surviving widow] half of the community property ceased to be hers and became a part of decedent's estate. The assumption is incorrect. [Sections 201 and 202 of the California Probate Code] Petitioner's half, like decedent's half, was subject to administration, but, unlike his half, *her half never became part of his estate.*" (Emphasis supplied.)

Question No. 2.

The answer to question 2 is found in the determination of the true ownership of the corpus involved by the provisions of the last will and testament of Decedent in light of the community prop- erty relationship of the properties of Walter and Emily immediately prior to his death and Emily's power or right to defeat the legal effect of her waiver by a withdrawal as her own property of up to fifty per cent of the corpus handled by the Executor.

The trial Court found a primary distinction between the Bishop case and the case at bar and held that Emily's waiver of her community property right and her agreement to take according to the will was an election by Emily that was binding and enforceable under California law, citing as authority, Flanagan v. Capital National Bank, 213 Cal. 664, 3 P.2d 307; Security-First National Bank of Los Angeles v. Stack, 32 Cal.App.2d 586, 90 P. 2d 337. See also, In re Estate of Watkins, 16 Cal.2d 793, 108 P.2d 417, 109 P.2d 1, and concluded that "upon the husband's death, in view of this election the entire community property became the estate of the husband," and "the widow's relationship to the estate was that of a beneficiary."

 It has long been settled in California that the spouses may agree with respect to the character of the property which they hold to transmute such property from community to the separate estates of both or either by an agreement which ordinarily need not be executed with any particular formality. This Court feels that the last Will and testament of Decedent and the contemporaneously executed waiver of Emily were each dependent upon the other but did not in and of themselves ipso facto resolve themselves into a binding contract between the spouses so that neither one could change the relationship without the consent of the other. In fact the Decedent so acknowledged in his last Will and Testament which became effective as of the instant of his death, that "all my properties and estate * * * are the community property of myself and my wife, Emily * * * and that it is my understanding that under the law of the State of California my said wife may elect to take one-half of all my property and estate absolutely as her own * * *."

There was no contractual stipulation between the spouses that Walter could not at any time revoke the will and make any distribution he saw fit of his one-half. At best any contractual obligation of the spouses could only have been created upon and subsequent to the death of Walter by reason of his lifetime belief that Emily would abide by her waiver which at best would be through the adoption of the equitable theory of estoppel.

Reviewing the cases relied upon by the District Court we find that Estate of Watkins, supra [16 Cal.2d 793, 108 P.2d 419], involves joint and mutual wills of husband and wife declaring that all the property therein disposed of was "their community property." That case does not deal with the legal problem presented in the case at bar.

Flanagan, supra, (Supreme Court of California) cited by the trial judge, revealed a situation of a husband's will leaving considerable real and personal property to the plaintiff, wife, the remainder of the estate being left to a brother, sister and niece. At the time of the execution of the will plaintiff, wife, signed an instrument reciting that she was the wife of the decedent, that she had read the will and that "in consideration of the provisions made in and by said will" she elected to accept the provision and conditions including the disposition of the "community property" and that she waived all claim to said community property. After death of the decedent the plaintiff commenced action against the executor claiming her share in the community. The court did say, 3 P.2d at page 308:

"Such an agreement is clearly supported by consideration and is binding upon the plaintiff irrespective of any element of estoppel arising from the testator's change of position in reliance upon the representation contained in the instrument."

However, the foregoing is pure dictum for the reason that the court further stated:

"However, there is no need to rest this decision on the validity of that instrument, for the facts show that plaintiff was not the wife of the decedent and her claim of community property rights was clearly unfounded."

A case of interest is In re Estate of Wyss, 1931, 112 Cal.App. 487, 297 P. 100, 103. The case reveals a situation of husband's will with the wife's waiver, stating:

"'I hereby elect to and do accept, acquiesce in and consent to said will and all of its provisions * * * and hereby waive all claims to my share of any community property,' including her right to a probate homestead."

The Court, 297 P. at page 103, states:

"This is not an agreement to do something in the future, but indicates a present agreement. Both the written instruments and the surrounding circumstances indicate a a complete and completed plan for the disposition of their community property, in the *event of the death of the testator*. Whether or nót the parties themselves could later have changed this plan, by agreement, or whether some subsequent act by one of the parties might have released the other is not determinative of whether or not the wife is bound after the death of the husband, the event in contemplation of which the instruments were made, nothing having been done by the parties in the meantime." (Emphasis supplied.)

The surviving widow claimed that she had the right to change her election and elect to take under the law rather than the will at any time prior to distribution or until such time as she had conducted herself toward the property in a manner to estop her from doing so. The Court stated:

"We think she was estopped from denying the validity of the instrument she signed. If this was not true at the time the instrument was signed, it became true when she permitted the situation to remain unal-

tered until the death of her husband. He was lulled into a sense of security, believing he had made an adequate provision for those dependent upon him.

"'Whenever a party has, by his own declaration, act, or omission, intentionally and deliberately led another to believe a particular thing true, and to act upon such belief, he cannot in any litigation arising out of such declaration, act, or omission be permitted to falsify it.' Code Civ.Proc. § 1962."

It is apparent that the true basis of the Court's determination that the widow should be bound by her waiver is that of estoppel after the death of the husband rather than upon a contractual relationship prior to death.

In O'Neil v. Ross, 1929, 98 Cal.App. 306, 277 P. 123, 126, cited in In re Estate of Wyss, supra, the husband executed his will and at the end of the will his wife, Mary, duly signed an addenda, which in its legal effect, consented to the will and waived all claim on her part to the community property of her husband and herself.[3]

The husband died and thereafter Mary executed a will devising her estate to her son John and wife in derogation to the husband's will and codicil. The trial court found that the factual situation constituted a binding contract between husband and wife to devise and bequeath their property in a certain specific way. In discussing this legal relationship the appellate court, 277 P. at page 128, stated:

"It would be sufficient for the purposes of this case, had the findings merely determined that at the date of the transaction the contract was unilateral only. The contract is found to be entirely in writing and we do not find in it any written words over the signature of Martin Johnson by which he bound himself irrevocably to make that identical will with respect to the provisions under consideration here. It seems more reasonable to interpret the transaction to mean that Mary Johnson agreed to do certain things if Martin Johnson made the will and left it until the time of his death. Most of the authorities on contracts to make a will show that one of the parties to the contract has performed. In such cases equitable principles are invoked. One who has obtained a legacy or devise in consideration of an agreement to do certain things is not permitted to keep the benefits conferred upon him by such promise and at the same time repudiate and refuse to carry out the promise. Equity will impose a trust upon such property. After the death of Martin Johnson, his widow was obliged to carry out her agreement according to its true intent and lawful meaning."

And, further, that to hold that by reason of the transaction husband, Martin, had—

"irrevocably bound himself to leave the said identical last will and testament at the time of his death, would be going further than we are willing to go. That would mean that Martin Johnson had no right thereafter to make a different will or to revoke the one he made no matter what might happen making such a course desirable. *Equity and justice would be well satisfied by holding*

3. "I, Mary Johnson, wife of Martin Johnson, hereby declare that I have read the foregoing will of Martin Johnson and I am satisfied with all of its provisions, and hereby consent to the provision therein *made for and relating to me therein and agree to carry out and fulfill the same* (italics ours), and consent that all of the estate of my husband, Martin Johnson, is and that the same be treated and considered in the distribution and disposition thereof as his separate property, and I hereby waive all claim to any part thereof as the community property of my said husband and myself, and accept the bequests and devises made to me in said will in full of all claim to community property or community rights. I further declare that I do this with a full * * *."

*that, if Martin Johnson had revoked or changed the said will during his lifetime after the said arrangement with his wife, it would simply have had the effect of releasing his wife from her promises and have given her the right to claim her full community interest and make whatever other claim she wished during the administration of her husband's estate.*" (Emphasis supplied.)

Security-First National Bank, supra [32 Cal.App.2d 586, 90 P.2d 339], involved the will of the husband with the written consent of his wife to the effect that she had read the will and fully understood it and that her husband "thereby disposes not only of his separate property but also of our community property now owned or hereafter to be acquired, if any, including my half thereof, and being fully convinced of its reasonableness and the wisdom of its provisions, I hereby elect to accept and acquiesce in the provisions of said Will, waiving all claims to my share of the community property * * *."

The certificate contained the further pertinent provision:

"This election and waiver is not a grant or release of right, title, interest or estate in any of our community property now owned or hereafter to be acquired, and shall be effective and valid for any purpose only after the demise of my husband and upon the condition precedent that said Will shall be duly admitted to probate * * *."

This certificate was attached to the will.

One of the provisions of the will provided:

"I declare that all of the property in which at the date hereof I have any interest, or which at this date stands in my name or in the name of myself and my wife, is our community property * * *"

After the death of husband the wife claimed title as an alleged surviving joint tenant to certain securities found in a safety deposit box held in their joint names and purchased with funds from their joint bank account. The court held that the declaration in the will of the wife's consent thereto terminated the joint tenancy and fixed the character of the property as community property and stated:

"This statement *acquiesced in* and agreed to by the defendant, regardless of the manner of the prior ownership of property or in whose name or names it stood, constituted for the *purposes of disposition* under the will the community estate of the respective parties." (Emphasis supplied.)

The phrases, "acquiesced in" and "purposes of disposition" are not idle phrases and must be accepted as being contra to a conclusion that the execution of the waiver and consent in and of itself constituted a revesting of title or ownership.

At this point it must be emphatically noted that in none of the foregoing California cases was the wife permitted by the terms of the will, the power and the right to render nugatory the effect of her waiver by the withdrawal of up to fifty per cent of the corpus dealt with by the will. In other words, reinstate herself with the community property she owned immediately prior to the death. In the case at bar we have such a right and power vested in Emily in the instant of the death of Decedent. No equitable doctrine of estoppel or resulting trust against Emily can be developed when the Decedent during his lifetime provided the means.

The doctrine of the Bishop case is sound and must be abided by in dealing with the case at bar and we are led to the query of "ownership" of the corpus dealt with by Decedent's will.

Ownership, so far as the basic theory of estate taxes, is the same as the basic theory of income taxes. The true owner or the holder of the power of direction or alienation is, under both estate tax theory and income tax theory, responsible for the payment of the tax

levied thereon. The District Court repudiated that premise under the theory that the "unit created by the will of the Decedent under a valid election of one of the spouses, may not be considered thereafter as a community interest and divisible for income tax purposes * * *." [134 F.Supp. 342.]

The Board of Tax Appeals case of Pacific National Bank of Seattle, 1939, 40 B.T.A. 128 dealt with a husband's will with the wife's attached waiver of all community and separate property rights and acceptance of the will attached thereto. This Court believes that the following reasoning of that case, at page 135, is sound in determining true ownership of the portion of the corpus involved:

"The wife's transfer of her interest in the marital community to her husband was not a present outright transfer to him, such as respondent attempt to spell out, but a transfer in trust to named trustees, under the fourth article of the will by which decedent disposed of the residue of his estate by a transfer in trust, the wife's transfer in trust being limited by the condition precedent that her husband predecease her. The husband created a testamentary trust, the wife made a gift in trust inter vivos on the condition named."

In a most enlightening article written by Judson F. Falkner, of the Seattle, Washington, Bar, appearing in 5 Washinton Law Review, 55 (1930), at page 63, we find the following:

"For it is manifest that at the time of the death of the husband, under a will such as we are here discussing (a disposition of the entire community estate by husband's will with the wife's election to take under the will) the state is in no position to levy any tax whatever upon the wife's half of the community property. Before the state can plausibly make such an attempt, a further voluntary and affirmative action on the part of the wife is re-quired. In other words, she must agree and consent, either by a formal written acceptance of the will and relinquishment of her interest in the community property, or by virtue of an estoppel, that her half of the community property shall, along with the husband's half, be turned into the trust. But this amounts to nothing more than a *conveyance by the wife to the trustee,* after the death of the husband, of her interest in the community property. The fact that the entire community property finds its way into the trust does not mean that the trustee of the beneficiaries under the trust receive the property by will or inheritance; it simply means that one-half of the community property goes to the trustee for the benefit of the named beneficiaries by virtue of the will of the husband, and the other half of the community property goes into the trust because of the voluntary and, what clearly seems to be, the legally affirmative act of the wife." (Emphasis supplied.)

Thus develops the relationship of co-settlor or co-trustee on the part of Decedent and Emily with the power of withdrawal and further direction on the part of Emily.

In Lehman v. Commissioner of Internal Revenue, 2 Cir., 1940, 109 F.2d 99, which is an estate tax case, however, the theory of ownership involved, necessarily applies to income tax matters. The question presented was whether certain property which the decedent, during his life time, had the right to withdraw from trusts created by himself and his brother was properly included in his estate for the purpose of estate taxes. During the decedent's lifetime he and his brother Allan, owned equal shares in stocks and bonds. The decedent agreed to transfer his share in trust for Allan and his issue in consideration of Allan's transferring his share in trust for the decedent and his issue. The trusts were reciprocal in that each permitted the

beneficiary to withdraw up to a total amount of $150,000.00. The decedent never exercised his right of withdrawal.

The case, at page 100, reminds us that "the law searches out the reality and is not concerned with the form." And, further states, at page 100: "A person who furnishes the consideration for the creation of a trust is the settlor, even though in form the trust is created by another," citing Scott on Trusts, section 156.3. The case reasons:

> "X transfers property in trust for himself for life, with power of revocation. Y [Emily] goes about it in a slightly different way; he [she] pays cash or transfers property to another [waives community property to husband] who in consideration of the cash or property sets aside or transfers securities in trust for Y [Emily] for life, with power in Y to terminate the trust and take the principal. Does any one suppose that X's estate is taxable under Section 302(d) [26 U.S.C.A. (I.R.C. 1939) § 811(d)] but that Y's estate is not? Here the transfer by decedent's brother, having been paid for and brought about by the decedent, was in substance a 'transfer' by the decedent and the property so transferred formed part of his taxable estate by virtue of section 302 (d), to the extent that the decedent had power 'to alter, amend or revoke' the enjoyment of it, that is to say, to the extent of $150,000."

Applying this reasoning to the instant case we will assume that upon Decedent's death Emily became estopped to revoke her consent and that therefore what was once her half of the community property became a part of the corpus to be dealt with by the testamentary trust. However, she had the power and right to withdraw and receive as her own property free of the testamentary trust, one-half of the corpus thereof, thereby reinstating herself in the same legal relationship to the community property of herself and the Decedent as she stood immediately prior to Decedent's death. In

what way could we more flout "reality" and be guided by "form" than in holding that Emily eventually acquired a different title, ownership or control over what property she owned as a tenant in community immediately prior to Decedent's death, by the exercise of her power and right to withdraw, all being a part and parcel of her initial waiver and dependent will of Decedent?

It is apparent that Emily held at all times complete control of one-half of Decedent's trust as delineated in his Last Will and Testament, which was subject, under the California law, to the administration of the husband's estate. But that fact does not make the property in any way different from a wife's one-half of community property, for, under California law, as stated, her community interest was also subject to administration in Decedent's estate. We must not lose sight of the basic "test of taxability" established as that of ownership or control under the Bishop case.

Assuming for the sake of argument that the Decedent's will and Emily's waiver constitute a valid, existing contract between them and by virtue thereof her one-half share of the community was immediately upon Decedent's death converted into his separate property or at least property over which he had first power and dominion of disposition in accordance with the tenor thereof. In such case it must necessarily follow that Emily held, upon the instant of the death of Decedent, the reserved, granted and vested right of control and ownership of up to one-half of the corpus of the residuary trust under Decedent's will and Emily's consent thereto.

Therefore, under the test of taxability of the Bishop case, the income received from one-half of the corpus held by Executor-Appellant is taxable to Emily. The fact that she exercised her vested right of control and ownership on May 8, 1941 rather than immediately after the death of Decedent or on January 11, 1939, when the Appellant took charge of its trust, is of no concern. Lehman case, supra.

It must be obvious that by the exercise of Emily's right and power under the will she returned the corpus to its character and ownership immediately prior to the execution of the dependent each upon the other will of Decedent and waiver of Emily, or in line with the expression of the intent of the testator.

Setting aside the assumption of a valid contract and tracing the realities and substance of the transaction rather than the form, under the doctrine of Lehman supra, we find that Emily controlled one-half of the community property down to the date of Decedent's death for her waiver was only effective upon the death of the Decedent. Giving force to the waiver a true analysis of the facts shows that at the date of Decedent's death Emily contributed her one-half of the community property to the testamentary trust set forth in Decedent's will, so, as in the reasoning of Lehman, supra, she was a co-trustor of the trust in regard to her one-half of all the community property and Decedent was a co-trustor in regard to his half of the community property. Decedent's will, which put into being the corpus of the trust, and to which Emily agreed, by its own tenor gave unto Emily the right to withdraw and to exercise control and ownership over one-half of the corpus of the trust which she actually did.

As in the case of Section 302(d), referred to in Lehman, supra, the Revenue Act of 1924, Federal Income Tax Law, has provided that where a grantor of a trust has the power to revoke the trust the income of the trust is taxable to the grantor. See e. g. Sec. 166, Internal Revenue Code, 1939, 26 U.S.C.A. § 166(1, 2); Section 676(a), Internal Revenue Code of 1954, 26 U.S.C.A. § 676(a). Section 166, Internal Revenue Code, 1939, was controlling for that part of the year, 1941, which is in controversy, and it provides:

"§ 166. Revocable trusts

"Where at any time the power to revest in the grantor title to any part of the corpus of the trust is vested—

"(1) in the grantor, either alone or in conjunction with any person not having a substantial adverse interest in the disposition of such part of the corpus or the income therefrom, or

"(2) in any person not having a substantial adverse interest in the disposition of such part of the corpus or the income therefrom, then the income of such part of the trust shall be included in computing the net income of the grantor."

In both Pacific National Bank of Seattle, supra, and in Coffman-Dobson Bank & Trust Co., 1930, 20 B.T.A. 890, acq. X-1 CB 13 (1931) it is established that under a will and testamentary trust conditioned upon the wife's election and waiver of her share of community property, the wife's transfer of her share of the community property was only effective upon the husband's death. At that time the wife's interest passed directly from her to the trust established by the husband's will and *was never a part of the husband's taxable estate.* (Emphasis ours.)

 It appears from the following authorities of the State of California that the testamentary trust of Decedent came into existence and the legal title to the property included therein, all subject to Emily's power and right of withdrawal, became vested in the testamentary trustee at the death of Decedent, the ultimate decree of distribution of Decedent's estate operating merely to confirm such title in the trustee: California Probate Code, §§ 28, 300; In re Estate of Lefranc, 1952, 38 Cal.2d 289, 297, 239 P.2d 617; In re Estate of Wellings, 1923, 192 Cal. 506, 510, 221 P. 628; In re Estate of O'Connor, 1905, 2 Cal. App. 470, 84 P. 317. Furthermore, the equitable interests of the trust beneficiaries came into existence at the testator's death.

Title Ins. & Trust Co. v. Duffill, 1923, 191 Cal. 629, 218 P. 14. Thus the testamentary trust in the present case came into existence at the time of the Decedent's death and was ready to receive a

transfer of community property from Emily at that time. Of course, the trust property was subject to administration in the Decedent's estate. California Probate Code, § 202. But this does not diminish the fact of control by Emily.

■ Therefore, under either the theory of contractual relationship or the force and effect of Sec. 166, Internal Revenue Code, 1939, one-half of the income of the testamentary trust, which trust for the purposes of this case comprises the whole of Decedent's estate, must be taxable to Emily.

Question 3.

By reason of the conclusion of the District Court the Appellee's defense of equitable recoupment was not considered. However, in view of the conclusion of this Court it is obliged to deal with the alleged defense.

We have noted above that the Appellee withheld from the Appellant's allowance for a refund, the sum of $7,-100.35, on the alleged ground that said amount was due from Emily's estate by reason of the assessment and overassessment made by the Internal Revenue Agent handling the matter.

The Bishop case, supra, was decided by the Ninth Circuit on December 10, 1945. The Commissioner had approximately 18 months after the Bishop case decision in which to collect the refund erroneously paid to Emily A. Gibson, deceased. However, he failed to take any steps to collect the tax except by way of an attempted recoupment by withholding from Decedent's estate tax refund, based upon its claim for refund of June 30, 1947, the stipulated sum of $7,-100.35. The Commissioner now wishes to establish his self-applied doctrine of equitable recoupment in defeating a recovery of the overpayment of taxes by Decedent's Estate in a stipulated amount on the following grounds:

1. The statute of limitations had run against any assessment which might be made against Emily A. Gibson, deceased;

2. the beneficiaries of Decedent's Estate and of Emily's Estate are substantially the same; and

3. therefore, any recovery by Appellant would redound to the benefit of the beneficiaries of Emily's Estate, which beneficiaries would have borne the burden of the tax which the Commissioner should have assessed against Emily A. Gibson, deceased.

Suffice to say that the so-called equitable doctrine of estoppel and equitable recoupment is based primarily upon the two Supreme Court cases, Bull v. United States, 1935, 295 U.S. 247, 55 S.Ct. 695, 79 L.Ed. 1421 and Stone v. White, 1927, 301 U.S. 532, 57 S.Ct. 851, 81 L.Ed. 1265. Further, that this equitable doctrine is predicated upon the peculiar equity involved in the respective cases. In subsequent decisions the Supreme Court and lower Court restricts the doctrine to the factual situation of those cases, and narrowed the effect thereof to the point that led Judge Frank, of the Second Circuit, to say:

"The gap in statutes of limitation created by the recoupment doctrine in tax cases seemed at one time to be fairly wide. But the gap has been narrowed markedly by McEachern v. Rose, 302 U.S. 56, 58 S. Ct. 84, 82 L.Ed. 46, and Rothensies v. Electric Storage Battery Co., 329 U.S. 296, 67 S.Ct. 271, 91 L.Ed. 296. Frankly, we do not know just how much of that doctrine still lives * * *." Wood v. United States, 2 Cir., 1954, 213 F.2d 660, 661, affirming, D.C.S.D.N.Y., 1953, 121 F.Supp. 764.[4]

■ We deem that the defense of equitable recoupment or estoppel is not available to the Appellee herein for the following reason: The Appellee, in its brief, states:

4. For a general discussion of the doctrine of equitable recoupment see, Mintz and Plumb, "Taxing Income in Years Not Realized Under Doctrine of Equitable Es-

toppel," 1954 Tax Institute, University of Southern California, School of Law, 481, 504–506, 513–515.

"It is true that should the Court render judgment in favor of the taxpayer in this case, that judgment will operate to lift the bar against assessment of the tax against the Estate of Emily Gibson or its transferees in accordance with Sections 1311 through 1315 of the Internal Revenue Code of 1954 (26 U.S.C. 1952 ed., Supp. II, Secs. 1311–1315)." (Gov't Br. 24.)

Appellee thus admits that it has, under the Internal Revenue Code, a procedure for the proper recovery of the erroneous refund made to Emily A. Gibson, deceased. There is no showing of any facts which justify the imposition of an equitable doctrine which has never been authorized by the Internal Revenue Code, in lieu of a full and adequate remedy at law.

For the reasons stated the Appellant is entitled to a judgment in its favor against the Appellee in the sum of $7,100.35, together with lawful interest thereon from April 13, 1950, until paid, and costs, and the decision and judgment of the District Court below is reversed.

POPE, Circuit Judge (dissenting).

Bishop v. Commissioner, 9 Cir., 152 F.2d 389, should be read in the light of its own facts. The key to that decision is found in the following statement therein (at page 391): "The Tax Court appears to have assumed that, upon decedent's death, petitioner's half of the community property ceased to be hers and became a part of decedent's estate. The assumption is incorrect. Petitioner's half, like decedent's half, was subject to administration, but, unlike his half, *her half never became a part of his estate.*" (Emphasis mine.)

In contrast to that situation the facts here are quite different. For, whatever the theory behind them, the California decisions make it plain that an arrangement like this one makes the property all pass under the husband's will; all the property became a part of his estate. The general statement in the Bishop case that "ownership is the test of taxability" is a good enough rule for most cases, and unobjectionable when used in that case where "her half never became a part of his estate." But when sought to be applied to the far different facts here, that statement is not only demonstrably wrong, but contrary to the express terms of the statute.

"It is well settled that the estate of a decedent vests, subject to administration, in his heirs or devisees and legatees immediately upon his death." Noble v. Beach, 21 Cal.2d 91, 130 P.2d 426, 429. This rule, stated in California Probate Code §§ 28 and 300, prevails in nearly every state. See 96 C.J.S. Wills § 1099, p. 821. So if a decedent left A and B as his devisees, application of a rule that "ownership is the test of taxability", would make A and B pay the taxes on the income of the estate. But they do not. The tax on the income during the administration of the estate is paid by the estate because the Act of Congress says so. I.R.C., 1939, Title 26, § 161. The estate collects the income, it has the funds in hand, and the devisees might not be able to pay a tax even if all of them were then ascertainable. At any rate that is what the statute says. It should be applied here.

The income here in question was that for the period January 1, 1941 to August 26, 1941. During all that period the estate was in the course of administration. A reference to § 166 of the same Revenue Code is not appropriate here. The trust set up under the will, like other devisees, is no doubt the "owner" of the trust res in the same sense that other devisees become owners under the rule of Noble v. Beach and Probate Code 28, supra, but until the estate was closed on August 26, 1941, there was no occasion for determining whether the trust should pay the tax on the trust income, or whether the wife, Emily, should pay it under § 166, as one who might be deemed a "grantor" with power to revest within the meaning of § 166.