[Civ. No. 28629.  Second Dist., Div. Three.  May 19, 1965.]

Estate of CARL WILLIAM CARSON, Deceased. ALAN CRANSTON, as State Controller, etc., Petitioner and Appellant, v. SECURITY FIRST NATIONAL BANK, as Executor, etc., Objector and Respondent.

Charles J. Barry, Walter H. Miller and Margaret Groscup, for Petitioner and Appellant.

Armstrong & Brown and Leon B. Brown for Objector and Respondent.

FORD, J.—The Controller of the State of California has appealed from an order sustaining the objection of the executor of the estate of Carl William Carson, deceased, to the report of the inheritance tax appraiser and fixing the inheritance taxes applicable to the interests passing from the decedent to his children.

Carl William Carson died on September 1, 1961. Pertinent portions of his will are set forth in the footnote.[1] On April 15, 1963, Lula O. Carson, the surviving wife, executed her written election to take under the provisions of the will rather than to claim her interest in the community property, it being stated therein that such election was irrevocable.

[1]The will, dated March 11, 1957, is in part as follows:

"THIRD: The provisions of this will, should my wife [Lula O. Carson] elect to take thereunder, shall dispose of all community property subject to testamentary disposition, including the interest of my wife therein, as well

The report of the inheritance tax appraiser included, as a transfer subject to inheritance tax, the remainder interests of the decedent's children, Jack Carson and Maxine Carson Capitani. The executor objected to the inclusion of such remainder interests of the children in the property which had been derived from the one-half interest in the community property owned at the time of the decedent's death by his wife, Lula O. Carson, being the property which formed the corpus of the trust designated in the will as "Trust A." The superior court upheld the position of the executor, its determination being that the written election of the surviving wife constituted a transfer by her on April 15, 1963, directly to the trustee named in the decedent's will of her one-half interest in the community property, to be held and administered under the terms and provisions of the will relating to "Trust A," and a transfer to the children of the remainder interests in the property so placed in trust. It was thus determined that the interests received by the children were not subject to inheritance tax as part of the estate of Carl William Carson.

---

as any separate property which I may hereafter acquire. Any such election shall expressly state that it is irrevocable.

"FOURTH: If my wife elects, in the manner aforesaid, to take under this will, I devise and bequeath my entire estate as follows:

(a) To Security-First National Bank of Los Angeles, as Trustee, in trust to administer the same as 'Trust A,' my wife's interest in all our community property; and

(b) To said Trustee, in trust to administer the same as 'Trust B,' all other property subject to my testamentary disposition.

Each of said trusts shall be deemed and administered as a separate trust, but each may hold undivided interests in the same property. . . . The net income of each trust shall be paid to Lula O. Carson, in monthly installments, during her lifetime, and each trust shall terminate upon her death.

"If at any time or times my wife, Lula O. Carson, shall be in want of additional funds for her maintenance and support or for her comfort, the Trustee shall pay to her out of the corpus of Trust A, or if that is insufficient, out of the corpus of Trust B, such additional sums as may be necessary to meet said want. Upon the death of my wife the corpus of each trust, together with any undistributed income thereof, shall be distributed in equal shares to our children, Jack Carson and Maxine Carson Capitani, or if either should not then be living, to the survivor and the issue of such deceased child on the principle of representation.

. . . "SEVENTH: If my wife does not elect, in the manner aforesaid, to take under the foregoing provisions of this will, I confirm her ownership of one-half of the community property and I devise and bequeath my entire estate in equal shares to our two children, Jack Carson and Maxine Carson Capitani, or if either should not be living, to the survivor and the issue of such deceased child on the principle of representation."

At the time of Mr. Carson's death section 13551 of the Revenue and Taxation Code was as follows: "Upon the death of a husband: (a) At least one-half of the community property is subject to this part. (b) The one-half of the community property which belongs and goes to the surviving wife pursuant to Section 201 of the Probate Code is not subject to this part.[2] (c) All of the community property passing to anyone other than the wife is subject to this part." Section 13552 of the same code then provided as follows: "When a husband by will making a testamentary disposition of the community property forces his surviving wife to elect whether to share in his estate under the will or to take her one-half of the community pursuant to Section 201 of the Probate Code, and she elects to take under the will, the property thus taken up to a value not exceeding one-half of the value of the community is not subject to this part." Sections 13551 and 13552 were rewritten by the Legislature in 1961, the amendments becoming effective on September 15, 1961, shortly after Mr. Carson's death.[3]

The federal estate-tax consequences in the husband's estate arising from a widow's election of the nature of that involved in the present case have been expressed by Professor Westfall as follows: "The doctrine of testamentary election with

[2]Section 201 of the Probate Code is as follows: "Upon the death of either husband or wife, one-half of the community property belongs to the surviving spouse; the other half is subject to the testamentary disposition of the decedent, and in the absence thereof goes to the surviving spouse, subject to the provisions of sections 202 and 203 of this code."

[3]Section 13551 of the Revenue and Taxation Code, as amended in 1961, is as follows: "Upon the death of a spouse: (a) None of the community property transferred to a spouse is subject to this part. If, however, on the death of the husband the wife is given by will either (1) a life estate in the one-half of the community property subject to the testamentary disposition of the husband or (2) a general or special power of appointment in conjunction with such one-half, all of such one-half is subject to this part. (b) All of the community property passing to anyone other than the surviving spouse is subject to this part."

Section 13552 of the same code, as amended in 1961, is as follows: "When a husband or wife by a will making a testamentary disposition of the community property forces the surviving spouse to elect whether to share in the estate under the will or to take one-half of the community pursuant to Section 201 of the Probate Code, and the surviving spouse elects to take under the will, the property not exceeding the clear market value of the community estate is not subject to this part. If, however, pursuant to the election under the will, the wife either (a) is given a life estate in the one-half of the community property subject to the testamentary disposition of the husband or (b) is given a general or special power of appointment in conjunction with such one-half, all of such one-half is subject to this part."

respect to the surviving spouse's interest in community property is established in California, Texas, and Washington, and has received some degree of recognition in other community-property jurisdictions as well. A common use of the election mechanism is an express provision in *H*'s [the husband's] will that he undertakes to dispose of both his own and his wife's interests in community property in trust for *W* [the wife] for life, remainder to the children, and that the disposition of his interest in favor of *W* is to be effective only if she acquiesces therein with respect to her interest. . . . It is generally assumed that *W*'s acquiescence in the election provision does not cause her interest in community property to be includible in *H*'s gross estate. Certainly such a conclusion is entirely reasonable in so far as it relates to the effect of the election alone, absent any agreement inter vivos with respect thereto, as *W*'s freedom of action has not been curtailed to any extent during *H*'s lifetime. The Code definition of the taxable estate contains no intimation that property is includible merely because someone other than the decedent chooses to allow it to devolve in a particular manner after the latter's death.'' (Westfall, *Estate Planning and the Widow's Election*, 71 Harv.L.Rev. 1269, 1272-1274; see also California Will Drafting (Cont. Ed. Bar) § 8.16, pp. 234-235; Ray, *The Widow's Election — A Study in Three Parts*, 15 Sw.L.J. 85, 135-136 (1961); Weingarten, *Gift and Estate Tax Consequences of Widow's Election in Community Property States*, 42 A.B.A.J. 1163 (1956); 2 Nossaman, Trust Administration and Taxation (1952) § 680, pp. 148-149.)

The governing law as to the federal estate-tax consequences is set forth in *Coffman-Dobson Bank & Trust Co.*, (1930) 20 B.T.A. 890, *acq.* (1931) X-1 Cum. Bull. 13. Therein the Board of Tax Appeals stated the issue of law involved in that case as follows: ''Does the act of a widow in placing her part of community property in a trust created by the will of her deceased husband, in consideration of a condition in said will giving her the income from the trust, which also included the interest of the decedent, vest, *ad interim,* her part of such property in the decedent's estate, so as to subject it to the Federal estate tax?'' In holding that the widow's part of the community property was not subject to such tax, the Board of Tax Appeals stated in part (20 B.T.A., at p. 891) : ''. . . it is clear, under the facts here shown, that the interests of the widow in the property put in trust passed direct from her to said trust,

and that it at no time was a part of the taxable estate of the decedent."

In *Pacific National Bank of Seattle, Executor*, (1939) 40 B.T.A. 128, *acq.* (1939) 2 Cum. Bull. 28, the decedent was a resident of the State of Washington. His wife had consented and elected to take under the will by a written instrument executed prior to his death. In its opinion the Board of Tax Appeals said in part (40 B.T.A., at p. 135): "The wife's transfer of her interest in the marital community to her husband was not a present outright transfer to him, such as respondent attempts to spell out, but a transfer in trust to named trustees, under the fourth article of the will by which decedent disposed of the residue of his estate by a transfer in trust, the wife's transfer in trust being limited by the condition precedent that her husband predecease her. The husband created a testamentary trust, the wife made a gift in trust *inter vivos* on the condition named."

In *Wells Fargo Bank & Union Trust Co.* v. *United States*, 245 F.2d 524, a California resident declared in his will that all of his property and estate consisted of community property of himself and his wife. In the will the testator further stated that the provisions thereof were conditioned upon the assumption that his wife would waive her right to take one-half, or any part, of his property and estate absolutely as her own and that she would elect to accept the provisions of the will made for her benefit. Contemporaneously with the execution of the will, the wife executed a waiver of her right to claim one-half or any part of the community property and agreed to accept the terms of her husband's will. Thereafter the husband died. The action was brought by the executor who sought a refund of certain income taxes alleged to have been erroneously assessed and collected with respect to a part of the period of time between the death of the husband and the decree of final distribution. In the course of its opinion the court stated (245 F.2d, at p. 532) that the reasoning found in the portion of the *Pacific National Bank of Seattle* case quoted hereinabove was "sound in determining true ownership of the portion of the corpus involved." The court then said (245 F.2d, at p. 532): "In a most enlightening article written by Judson F. Falkner, of the Seattle, Washington, Bar, appearing in 5 Washington Law Review, 55 (1930), at page 63, we find the following: 'For it is manifest that at the time of the death of the husband, under a will such as we are here discussing (a dis-

position of the entire community estate by husband's will with the wife's election to take under the will) the state is in no position to levy any tax whatever upon the wife's half of the community property. Before the state can plausibly make such an attempt, a further voluntary and affirmative action on the part of the wife is required. In other words, she must agree and consent, either by a formal written acceptance of the will and relinquishment of her interest in the community property, or by virtue of an estoppel, that her half of the community property shall, along with the husband's half, be turned into the trust. But this amounts to nothing more than a *conveyance by the wife to the trustee,* after the death of the husband, of her interest in the community property. The fact that the entire community property finds its way into the trust does not mean that the trustee of the beneficiaries under the trust receive the property by will or inheritance; it simply means that one-half of the community property goes to the trustee for the benefit of the named beneficiaries by virtue of the will of the husband, and the other half of the community property goes into the trust because of the voluntary and, what clearly seems to be, the legally affirmative act of the wife.' (Emphasis supplied.)''

At a later point in the opinion in the *Wells Fargo Bank & Union Trust Co.* case, *supra,* the court stated (245 F.2d, at p. 534): ''In both *Pacific National Bank of Seattle, supra,* and in *Coffman-Dobson Bank & Trust Co.,* (1930) 20 B.T.A. 890, *acq.* X-1 CB 13 (1931) it is established that under a will and testamentary trust conditioned upon the wife's election and waiver of her share of community property, the wife's transfer of her share of the community property was only effective upon the husband's death. At that time the wife's interest passed directly from her to the trust established by the husband's will and *was never a part of the husband's taxable estate.* (Emphasis ours.)'' (See *United States* v. *Stapf,* 375 U.S. 118, 123 [84 S.Ct. 248, 11 L.Ed.2d 195]; Brookes, *The Tax Consequences of Widows' Elections in Community Property States,* 1951 So. Cal. Tax Inst. 83, 99-100 (1951).)

In the present case the husband died on September 1, 1961, but the surviving wife did not make her election to take under the will until April 15, 1963. Prior to the time of that election her community property interest was not divested. (*Estate of Kelley,* 122 Cal.App.2d 42, 44 [264 P.2d 210].) Under the reasoning of the authorities discussed here-

inabove, in reality the transfer in trust of the surviving wife's one-half interest in the community property was made by her and not by her deceased spouse. Therefore, the question remaining for determination is whether, as to the interests of the remaindermen in the property transferred subject to the terms of the trust designated as "Trust A," an inheritance-tax liability arose in the course of the probate of the deceased husband's estate.

Under the California Inheritance Tax Law (Rev. & Tax. Code, § 13301 et seq.), the tax imposed is on the right to succeed to property. (*Estate of Radovich*, 48 Cal.2d 116, 121 [308 P.2d 14].) As used in that law, "estate" or "property" means the real or personal property or interest therein of a decedent or transferor. (Rev. & Tax. Code, § 13303.) A decedent or transferor is any person by or from whom a transfer is made. (Rev. & Tax. Code, § 13305.) "Market value," with respect to property included in any transfer, is defined to be "the market value of the property as of the date of the transferor's death, whether or not the transfer was made during the lifetime of the transferor." (Rev. & Tax. Code, § 13311.)

Section 13601 of the Revenue and Taxation Code is as follows: "A transfer by will or the laws of succession of this State from a person who dies seized or possessed of the property transferred while a resident of this State is a transfer subject to this part." In the Inheritance Tax Law there is no provision expressly embracing a transfer of remainder interests of the nature of that involved in the case presently before the court. The questions of the gift-tax consequences to the surviving wife and the inheritance-tax consequences upon her death with respect to the remainder interests are not, of course, before this court.

The question remains as to the significance of that portion of section 13551 of the Revenue and Taxation Code which, at the time of Mr. Carson's death, was found in subdivision (c): "All of the community property passing to anyone other than the wife is subject to this part."[4] On behalf of the State Controller the argument is made that if that provision did not embrace the remainder interests in

this case it served no purpose in view of the language of subdivision (a) which provided that upon the death of a husband "At least one-half of the community property is subject to this part." But that argument loses force when it is considered in the light of the present wording of section 13551 (see fn. 3 of this opinion) since there is no reasonable basis for a conclusion that the amendment of that section in 1961 was intended to alter in any way the law with respect to the issue presented in this case. ▮ "It is settled law that taxing statutes are acts *in invitum* and that the courts will not adopt a strained construction to impose a tax which is not a part of the legislative act." (*Estate of Bendheim,* 100 Cal.App.2d 398, 401 [223 P.2d 874] ; see 26 Cal.Jur.2d, Inheritance and Gift Taxes, § 8, p. 703.) ▮ Under the governing law the quoted language of section 13551, subdivision (c) of the Revenue and Taxation Code must be construed to embrace only community property passing to anyone other than the surviving spouse because of a transfer made by the deceased spouse. To hold that it imposes tax consequences in the deceased husband's estate upon the remainder interests of the children with respect to the property of "Trust A" would be to overlook the fact that the effective cause of the transfer was the voluntary and affirmative act of the wife and would constitute a strained construction of the Inheritance Tax Law.[5]

The conclusion just stated finds support in the reasoning of the court in *Calvert* v. *Fort Worth National Bank,* 163 Tex. 405 [356 S.W.2d 918]. In that case the testator undertook by the terms of his will to dispose of his separate property and all of the community property. It was provided that the surviving wife should receive the home, furniture and personal effects. All of the remainder of the separate and community property was devised and bequeathed to a bank as trustee with directions to pay the net income or $500 per month, whichever was greater, to the surviving wife during her life. Upon her death the trust was to terminate and all of the trust property then held by the trustee was to be divided between the heirs of the testator and designated relatives of his wife. The will also contained a provision

---

[5]It is to be noted that the respondent concedes that the remainder interests involved in the trust designated "Trust B" are subject to inheritance tax in the course of the administration of the deceased husband's estate since they arise from the transfer of interests in his half of the community property.

as to the disposition of the testator's separate property and community interest in the event that his wife should not elect to take under the will. By written instrument filed in the probate proceedings the surviving spouse, Mrs. Taylor, elected to take under the will. Upon the theory that the entire community estate as well as the separate property had passed by the will, an inheritance tax was assessed against the beneficiaries of the will other than the surviving wife (no tax being assessed against her because she did not receive more than her community interest plus the statutory exemption).

In holding that the community interest of the wife did not pass by the will of her husband within the meaning of the inheritance-tax statute, the court stated in part (*Calvert* v. *Fort Worth National Bank,* 163 Tex. 405, at p. 411 [356 S.W.2d 918, at p. 922]: "As pointed out by the writer in 5 Washington Law Review 55, it is manifest that no tax liability with respect to Mrs. Taylor's community interest accrued at the death of her husband or upon the probate of his will, because her interest did not and could not pass solely by virtue of such will. Before it could be said that Mrs. Taylor's interest had passed by any means, a further voluntary and affirmative action on her part was required. It was not until she elected to take under and in accordance with the provisions of the will that the trustee became entitled to her interest in the community property. Although the election when made might be held for some purposes to relate back to Mr. Taylor's death, the effective legal act was the voluntary election of the living wife and not the testamentary disposition of the deceased husband. It seems clear to us then that Mrs. Taylor's community interest did not pass to the trustee by her husband's will within the meaning of Article 14.01." (See Note, 17 Sw.L.J. 143 (1963).)

The order is affirmed.

Shinn, P. J., and Kaus, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied July 14, 1965.